## STEWART *v.* SEABOARD AIR LINE RAILWAY.

1. Even if the defendant was negligent in furnishing to the plaintiff an improper appliance, the plaintiff had equal opportunity with the defendant of discovering the defect in the appliance furnished, and the defendant was, therefore, not liable for an injury resulting from such defect.
2. Considering the evidence as a whole, it appears that the injury to the plaintiff was not occasioned by negligence on the part of either the defendant or the plaintiff, but that it was the result of an accident.
3. Whether the case be considered in the light of the evidence introduced, or in the light of the evidence admitted as well as that which was rejected, the railway company was not liable to the plaintiff, and the court did not err in granting a nonsuit.

Submitted May 1, — Decided June 6, 1902.

Action for damages. Before Allen Fort, judge pro hac vice. City court of Americus. November 21, 1901.

*W. P. Wallis,* for plaintiff.   *E. A. Hawkins,* for defendant.

Cobb, J. Stewart sued the Railway Company for damages. At the trial the court granted a nonsuit, and to this judgment the

plaintiff excepted. It appeared from the evidence that the plaintiff was a mechanic employed by and at work in the shops of the railway company. On a hill near the shops timber to be used in the shops was stored by the defendant, and to convey this timber from the place where it was stored to the shops a hand or push-car was used which was propelled along a track running from the place where the timber was located down an incline to the shops. This push-car consisted of trucks and an open frame above the same, there being no floor on the car. The timber was placed upon this frame, and the speed of the car in going down the incline was regulated by brakes which were controlled by a lever on the side of the car. The plaintiff was directed to take the car, go up the hill, and bring to the shops a heavy piece of timber. In obedience to this direction he repaired with the car to the top of the hill, and with another employee placed the piece of timber upon the car, seated himself on the end of the timber, which was at a point on the car near the lever, and placed his foot between the end of the timber and one of the cross-beams of the car. The other employee placed himself upon the timber behind the plaintiff. While the plaintiff was in this position, the car was started down the hill, and when it had attained a speed which was considered by the plaintiff to be as high as was safe, the lever was used by him to control the speed of the car and prevent it from being increased. It was then found that the brakes would not control the car. The speed increased, and the car was propelled, by running at a high rate of speed, against some trucks which were on the track, and plaintiff's leg was broken by being crushed between the end of the timber and the cross-beam of the car. The plaintiff did all he could to stop the car, and the brakes would not hold the wheels. Plaintiff had been working for the railway company for more than a year, and had used this car frequently, sometimes using it every day, and then not using it for a week at a time. The plaintiff testified that there was nothing the matter with the car other than the brake, that he knew of; that, so far as he knew, the car was in good condition and equipped with the proper machinery. The brake appliances would not stop the car on the occasion that he was hurt; that was all he knew; they had held the car before when he operated it, and had not failed to hold prior to that occasion. He had not used the car on the day on which he was hurt, previously to

the time he was hurt.    He had used it the week previous, but did
not remember the day.    He had opportunities to see it frequently.
He used it — you might say — daily, and sometimes more than
once a day.    He never noticed anything wrong with the brake be-
fore that day, and did not notice anything wrong with it before the
accident that day.    If there was anything wrong, he never knew
it.    The car had been operated by him without any trouble before,
and its movements were controlled by the same brake all the time
up to that time.    He had the brakes on when he first started down,
and when he got to the crest of the hill he lost control of the
movements of the car.    There was testimony from an employee
of the railway company, that after the accident he examined the
car and found that some of the nuts needed tightening up, which
was done, and that it was necessary to take up " some slack in the
brake; the slack was in the rod that goes from the brake-beam to
the lever."    This witness also testified that if the rod was slack you
would have to pull the lever a little farther than if it was tight,
and if the iron rods were slack you might pull the lever clean back
and it would not give power enough to stop the wheel; that when
he worked on the brake, which was two days after the accident,
there was nothing the matter with the car except the slack above
referred to; and that the effect of this slack would be that the lever
would have to be pushed farther back.    There appear in the rec-
ord photographs of the car and the tracks and the place at which
the accident occurred.

The plaintiff alleged in his petition that the defendant was neg-
ligent in two particulars: first, that the defendant negligently fur-
nished unsafe machinery and appliances for the use of the plaintiff
and an unsafe place for him to work; that the appliances, means,
and brakes for stopping the car, which were furnished to him, were
not sufficient for that purpose; and, second, that the defendant neg-
ligently failed to inspect and superintend the machinery and appli-
ances which were furnished to the plaintiff, and if these appliances
and machinery had been inspected the defect in them could have
been discovered by the defendant.    The evidence failed to estab-
lish the allegation that the defendant negligently furnished an im-
proper appliance for the use of the plaintiff in bringing the timber
from the place where it was located to the shops.    There was noth-
ing in the evidence from which a jury could find that the place at

which the plaintiff was put to work, that is, the track leading from
the top of the hill to the shops, was not constructed in a manner
that was reasonably safe for the business to be carried on upon such
tracks.　But even if it be conceded that there was evidence show-
ing that the track was improperly constructed, this defect was pat-
ent and visible, and the plaintiff, after the opportunities afforded
him by more than a year's service of observing the defects in these
tracks, would not be permitted to complain of the character of the
place at which he was put to work, when the defects, if any ex-
isted, were patent and visible every day while he labored for the
defendant.　The evidence did not authorize a finding that the car
which was furnished to the plaintiff was an improper appliance.
On the other hand, the evidence demanded a finding that, so far as
the character of the car was concerned, it was reasonably suited to
the uses for which it was intended, and that the particular car used
was properly constructed in every respect.　According to the plain-
tiff's own testimony, there was nothing wrong about the construc-
tion of the car.　It had been used often by him before the occasion
on which he was hurt, and frequent use by the plaintiff had dem-
onstrated that it was properly constructed and properly equipped.
The brakes had never failed to work on any occasion before when
the plaintiff had used the car.　They failed to work on this occa-
sion, but it does not clearly appear from the evidence what was the
cause of this failure.　The employee of the defendant who examined
the car two days after the accident testified that at that time some
of the nuts about the brake needed tightening, and that there was
a slack in one of the rods which was required to be taken up; but
this witness testified that he did not know whether the slack was
sufficient to cause the brakes to fail to work when the lever was
carried back as far as it would go, for the reason that he did not try
the brakes at all until after he had taken up the slack, and that he
did not know what was the condition of the slack on the day of
the accident.　The plaintiff testified that he had the brakes on when
he started down the hill, and lost control of the car for some rea-
son just as the car left the crest of the hill.　What was the mat-
ter with the brakes on the day of the accident and what caused the
accident can not be clearly seen from any of the evidence intro-
duced.　From the evidence of the plaintiff, as well as from the
photographs in the record, which were before the judge in the court

below, it is apparent that all of the machinery and appliances in connection with the brakes could be easily seen by any one using the car. If there was anything visibly wrong about the brakes on the day in question, it could have been discovered by the plaintiff as well as by the defendant; and if both the plaintiff and the defendant had equal opportunities of discovering this patent defect in the appliance on the day the accident occurred, then the defendant would not be liable for an injury resulting therefrom. See Civil Code, § 2612; *Central Railroad Co.* v. *Kenney*, 58 *Ga.* 485; *Western & Atlantic Railroad Co.* v. *Bradford*, 113 *Ga.* 276. On the other hand, if the defect was latent, and both the plaintiff and the defendant had equal opportunities for discovering it, then the defendant would not be liable for an injury resulting from such a defect. It is impossible to determine from the evidence what was the defect in the car. On former occasions the appliances had been sufficient to control the operations of the car. So far as the evidence in the record is concerned, at the time the car was carried to the top of the hill there was nothing about the car that would indicate, either to the railway company or to the plaintiff, that there was any reason why the same could not be safely used on this occasion. This becomes apparent when we consider the fact that the plaintiff himself testifies that he had the brakes on when he started down the hill. Taking the evidence as a whole, we can not say that it would authorize a finding of negligence on the part of the defendant. There was no defect in the construction of the car. It had been used by the plaintiff the week previous to the accident and was then in good condition. There was nothing in the evidence which would authorize a finding that the railway company had been negligent in not inspecting the car between the last time the plaintiff had used it and the time he was hurt. If, however, there was any evidence of negligence on the part of the defendant, the evidence required a finding that the defect, whatever it was, was of a character that the plaintiff had with the railway company equal means of discovering, either before or at the time the car was used. Taking the case as a whole, our conclusion is that the failure of the brakes to work on the day in question was not the result of any negligence on the part of the defendant company, but simply one of those unforeseen results sometimes occurring in the operation of machinery of this character, where the employer was not at fault

in reference to the machinery furnished, nor the employee at fault in reference to the manner in which he operated it on the particular occasion. It rather appears to have been an accident pure and simple, unmixed with negligence on the part of either the plaintiff or the defendant. In any view of the case, a verdict in favor of the plaintiff would have been unauthorized, and the court did not err in granting a nonsuit.

Error is assigned upon the refusal of the judge to permit the plaintiff to testify that the foreman of the men who managed the push-car said, fifteen or twenty minutes after the accident, that there ought to have been leathers on the car; and the plaintiff replied to this, if it would do any good, to put leathers on another car then in use, as it might prevent another accident. Under the view we have taken of the case, this evidence was immaterial. Whether the case be considered solely in the light of the evidence admitted, or in the light of that admitted together with the evidence rejected, the result should be the same.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*