64499. AMEAR v. HALL.

QUILLIAN, Chief Judge.

Plaintiff, Tom Amear, appeals from a jury verdict and judgment for defendant Dr. George Hall. Dr. Hall, a radiologist, normally worked from 8:00 a.m. to 6:00 p.m. on weekdays, and frequently on weekends. He stated that he had neither the time nor the capability for household maintenance work and hired someone to do anything that needed to be done. He asked a nursery to recommend someone to do landscaping work and was referred to Ivan Davey — the partner of plaintiff Amear. Hall and Davey discussed his employment in January, 1977. No written contract was entered into. Hall would tell Davey what needed to be done and Davey would give him an estimate. When Hall would OK the estimate Davey, Amear, or other employees would accomplish the work and Hall would be billed for the completed work. Hall used Davey and Amear not only for landscaping and nursery work but for any work Hall needed to be done. Hall testified that he seldom saw Davey or Amear since he was at work and if he saw them it would be only for 5 to 10 minutes at a time. The evidence showed that Davey and Amear controlled their hours of work and method of accomplishing the work. In February of 1977, Amear testified that it was too cold to work in the mornings so they would not commence work until late in the afternoon when it warmed up, and quit when it became too cold or too dark.

Hall employed Davey to rebuild a greenhouse. When the construction was finished a part of a roll of fiberglass remained. Hall asked Davey to install the fiberglass over four spaces formed by exposed beams connecting the carport and the house. The beams, approximately 10 feet from the ground, were purely decorative and ornamental, and not functional — nor did they have a structural purpose. They were nailed to the carport and the house by a method called "toenailing" and by using finishing nails. Hall did not instruct Davey or Amear how they were to install the fiberglass but did tell them what to use (the fiberglass left over from the greenhouse), where to install it, and that it had to be finished by 6:30 p. m. the next afternoon because Hall had a dinner party at that time and guests would be arriving. Amear stated that it was so late in the day when Hall informed him that he and Davey decided to postpone the job

until the next day. They waited until late in the afternoon to commence work because it was cold and they thought they could finish before it became dark — which would be around 5:30 p. m. in February. Hall was not at home when the exposed beams were to be covered. His housekeeper and daughter were at home. Amear and an employee of the partnership — Goodman, were installing the fiberglass over the exposed beams. Goodman was a civil engineering graduate of Georgia Tech — a surveyor. Although he had studied weight bearing potential of various materials in structural analysis he had not worked with wood and had no prior experience as a carpenter. Hall did not tell Amear or Goodman how to accomplish the task of installing the fiberglass on the beams. Hall did not tell Goodman how to accomplish any job — Davey told him. It was Goodman and Amear's idea to place the ladder against the carport and go to the roof of the carport and then to step out onto the tops of the beams. Each inspected the beams before they went up the ladder. Goodman testified that "they looked all right" to him. There was no sign of a defect in the beams — viewing them from the ground. Amear testified that Hall did not tell them how to accomplish the job of affixing the fiberglass to the beams. It was left entirely to him and Davey to decide how it was to be done. Amear looked at the beams before going up the ladder. "They looked sound and safe." Before Goodman and Amear went out onto the beams each tested the beams with their weight, "to make sure they would hold our weight, and then we walked out across the boards, nailing rafters as we went." The nails in each end of a beam supporting Amear pulled through the beam and the beam and Amear fell to the ground below. Amear was severely injured. The jury found for the defendant and judgment was entered on the verdict. Plaintiff appeals. *Held:*

1. The plaintiff's complaint alleged a master-servant relationship existed between himself and the defendant. Defendant's answer alleged that such relationship was that of owner — independent contractor. The trial court permitted the jury to resolve the issue under instructions. *Quinan v. Standard Fuel Supply Co.,* 25 Ga. App. 47 (2) (102 SE 543).

Hall stated that he hired only Davey and instructed only Davey on what he wanted. He never told Davey "how [he] wanted [him] to proceed to do it, the method." Davey made the decision "as to how the work was to be accomplished." Davey and his employees were "allowed to come and go when they wanted to, when Mr. Davey told them to. They were allowed to work as Mr. Davey directed them to."

Davey testified he was told by Dr. Hall as to what work was to be done and he would prepare an estimate. After Hall approved the estimate he and Amear and their employees accomplished the work

and he would bill Hall for the completed job. After they were almost finished with the greenhouse, on the afternoon before this incident, he and Dr. Hall were under the beams between the carport and the house, and Dr. Hall told him to use the leftover fiberglass from the greenhouse to cover four of the spaces between the beams. It was late in the afternoon and he asked if it would be alright to start the following day. Dr. Hall stated that it would be alright to do it the following day but they would have to be finished before 6:30 p.m. because Hall had dinner guests that were to arrive at that time. Davey looked at the beams and "they looked sound to me." He had seen structures like that before and was aware "[t]hey're not made for people to be up there standing on them." He did not look to see how the beams were secured to the house.

Amear testified that Hall did not tell them how they ought to do any job. He was asked: "Q. That was left entirely to you and Mr. Davey to decide how it was to be done, wasn't it. A. Yes."

Goodman also stated that Davey did the hiring and firing and decided who would do what job. Davey "decided how the work was to be accomplished and dealt with the employees." Davey set the hours of work and where he was to go. Hall never specified who was to come to work and never told him how to accomplish a job — Davey did. Goodman was asked: "... getting up on the carport and getting out on the beams and tacking Fiberglass down, that method of operation was not Dr. Hall's idea, was it? A. No, sir. Q. He had nothing whatsoever to do with that? A. No, sir. Q. Whose idea was it to do it that way? A. It was mine and Tom's, Tom Amear's. Q. Exclusively? A. Yes, sir." Hall's testimony was in agreement.

" "The test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.' ... 'Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right to control the manner, method and means of the performance of the contract, and that the employee is not an independent contractor.' The test is not whether the employer *did in fact control* and direct the employee in the work but it is whether the employer had that right under the employment contract." *Golosh v. Cherokee Cab Co.,* 226 Ga. 636, 637-639 (176 SE2d 925).

The test historically applied by this Court has been " ' "whether

a person employed is a servant or an independent contractor is whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work, as contradistinguished from the right to insist upon the contractor producing results according to the contract, or whether the contractor in the performance of the work contracted for is free from any control by the employer of the time, manner, and method in the performance of the work. [Cits.]" [Cits.]'" *Sloan v. Hobbs Sporting Goods Shop,* 145 Ga. App. 255, 257 (243 SE2d 673); accord: *Withrow Timber Co. v. Blackburn,* 244 Ga. 549, 550 (261 SE2d 361). Under either test, the evidence demanded a finding that plaintiff was an independent contractor.

2. An owner or occupier of land is liable in damages to invitees who come upon his land for injuries occasioned by his failure to exercise ordinary care in keeping the premises safe. Code Ann. § 105-401 (Code § 105-401). This duty requires the owner or occupier of land to exercise ordinary care for the safety of his invitees in discovering defects or danger in the premises and imposes liability for injuries resulting from such defects as a reasonable inspection would disclose. *Fulton Ice & Coal Co. v. Pece,* 29 Ga. App. 507 (1) (116 SE 57). Under this principle is found the duty of an owner of premises to an individual contractor and his employees who lawfully come upon the premises in the performance of a contract between the owner and the contractor because the independent contractor and his employees are invitees. Id.; *Chambers v. Peacock Const. Co.,* 115 Ga. App. 670 (3) (155 SE2d 704); Restatement, Torts, Second § 332 (3); 41 AmJur 2d 781, Independent Contractors § 27. Thus, an owner having work done on his premises by an independent contractor, who has actual or constructive knowledge of potential dangers on the premises, owes a duty to the contractor to give warning of, or use ordinary care to furnish protection against, such dangers to the contractor and his employees who are without actual or constructive notice of the dangers, and which could not be discovered by them in the exercise of ordinary care. *Swanson v. Choate,* 108 Ga. App. 152 (1) (132 SE2d 246); *Seagraves v. ABCO Mfg. Co.,* 118 Ga. App. 414, 417 (1) (164 SE2d 242); see also 57 CJS 377, Master and Servant, § 606.

" 'There is no liability from ownership alone . . . It must appear that the injury resulted from a breach of some duty owed by the defendant to the injured party.' " *Daniel v. Ga. Power Co.,* 146 Ga. App. 596, 600 (247 SE2d 139). Liability, if any, of the owner "is dependent on whether [the owner] had any duty which might arise from ' "control of the property [or] . . . title thereto . . . [or had] a superior right to possession of property which is in the possession or

control of another." [Cit.]' *Scheer v. Cliatt,* 133 Ga. App. 702 (2a) (212 SE2d 29)." *Daniel v. Ga. Power Co.,* 146 Ga. App. 596, 597, supra; see generally 62 AmJur2d 239, Premises Liability § 12. "Before the owner of premises can be held liable for injuries done by reason of a defect therein to one lawfully on the premises in the employ of an independent contractor engaged by the owner to perform services on the premises, it must appear that the owner had control of the premises." *Southern Hotel Co. v. Evans,* 28 Ga. App. 161 (1) (110 SE 459); *Williams v. NICO Industries,* 157 Ga. App. 814, 817 (278 SE2d 677). The basis of the owner or occupier's liability is his superior knowledge of the existence of the defect or hazard that may subject an invitee to an unreasonable risk of harm. *Pound v. Augusta National,* 158 Ga. App. 166, 167 (279 SE2d 342); *Moss v. Atlanta Housing Auth.,* 160 Ga. App. 555 (287 SE2d 619). However, a landowner is not an insurer of an invitee's safety. *Watson v. C & S Nat. Bank,* 103 Ga. App. 535, 536 (120 SE2d 62); *Hammonds v. Jackson,* 132 Ga. App. 528, 531 (208 SE2d 366). The invitee must also exercise ordinary care for his own safety and must by the same degree of care avoid the effect of the owner or occupier's negligence when it becomes apparent to him, or in the exercise of ordinary care should have learned of it. *King Hardware Co. v. Teplis,* 91 Ga. App. 13, 15 (84 SE2d 686); *Alterman Foods v. Ligon,* 246 Ga. 620, 623 (272 SE2d 327). But, an invitee is not obliged to inspect the premises to discover latent defects nor even to observe patent defects. *Misenhamer v. Pharr,* 99 Ga. App. 163, 166 (107 SE2d 875).

An individual contractor is expected to determine for himself whether his place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance of the contract. *Chambers v. Peacock Const. Co.,* 115 Ga. App. 670, 675 (2), supra; see generally 57 CJS 379, Master & Servant § 607. Unless the owner and an injured employee have a relationship of master-servant, the employer is generally not responsible for injuries occasioned by the method by which work is done by the employee. *Atlanta & Fla. R. Co. v. Kimberly,* 87 Ga. 161, 169 (13 SE 277); *Fields v. B & B Pipeline Co.,* 147 Ga. App. 875 (3) (250 SE2d 582). "It is also the general rule that the independent contractor's employer is under no duty to take affirmative steps to guard or protect the [individual] contractor's employees against the consequences of the contractor's negligence, or to provide for their safety." *United States v. Aretz,* 248 Ga. 19, 24 (280 SE2d 345).

" 'The rules governing the land proprietor's duty to his invitee presuppose that the possessor [of the land] knows of the condition and "has no reason to believe that they (his invitees) will discover the

condition or realize the risk involved therein." ' " *Pound v. Augusta National,* 158 Ga. App. 166, 168, supra. Because " '[t]he basis of the proprietor's liability is his superior knowledge, and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting in view of his knowledge, assumes the risks and dangers incident to the known condition.' " *Rogers v. Atlanta Enterprises,* 89 Ga. App. 903, 906 (81 SE2d 721); see 35 ALR 3d 230, 244 § 4 (b).

In the instant case, Hall testified that he had the house painted every four years and in the summer of 1976 he had the house painted and told the painter — as he had told the painters before him, if he found any boards were defective to replace them or notify him and he would have a carpenter replace them. During the summer of 1976, he had been advised by the painter to replace some boards and he had them replaced in the front, on the back porch, and some of the beams between the carport and house were replaced. He does not remember how many. When he spoke to Davey about covering the exposed beams he looked at the beams and he did not see anything wrong with them. Davey looked at the beams and "they looked sound to [him]." Davey was aware that they were not made for people to stand on. Goodman and Amear also examined the beams and they also were of the opinion that the beams appeared to be sound, and each tested the beams they walked on with their weight before proceeding onto them. Hall had hired Davey and his men because of their superior ability to do the job. He had observed them doing the carpentry work involved in rebuilding the greenhouse before he told them to place fiberglass over four spaces formed by the ornamental beams between the house and the carport. All persons involved visually inspected the beams prior to commencing work and Amear and Goodman physically tested them. Hall had painters advise him of any boards that needed to be replaced and he had replaced them. Hence, it affirmatively appears that plaintiff and defendant each had equal opportunity to inspect and detect any noticeable defect. "If it appeared safe to the plaintiff under these circumstances, it must have appeared safe to the defendants . . . Where the owner or occupier of premises is without actual knowledge of the existence of a defect, and there is nothing in the appearance or character of the premises or some instrumentality on the premises which would indicate the possible or probable existence of any defects, there is no reason to think an inspection necessary, and ordinary diligence would not require an inspection of the premises or an instrumentality upon the premises before permitting an invitee to make use of the same. [Cits.]." *McCarthy v.*

*Hiers,* 81 Ga. App. 365, 367 (59 SE2d 22); accord: *Bryan v. Moncrief Furnace Co.,* 40 Ga. App. 239 (4) (149 SE 424); *Howerdd v. Whitaker,* 87 Ga. App. 850, 853-854 (75 SE2d 572); *Rogers v. Atlanta Enterprises,* 89 Ga. App. 903, supra; *Pound v. Augusta National,* 158 Ga. App. 166, 168, supra; *Moss v. Atlanta Housing Auth.,* 160 Ga. App. 555, supra; see also *Stewart v. Seaboard Air Line R.,* 115 Ga. 624, 628 (41 SE 981); *Roberts v. Wicker,* 213 Ga. 352, 355 (99 SE2d 84). However, here the defendant made the visual inspection of the beams the day before the incident occurred, and there had been a closer inspection by the painter in the summer of 1976 before this incident on February 2, 1977. Further, plaintiff made an inspection of the beams before walking on them and tested the beam that fell with his weight. Both plaintiff and defendant had equal opportunity to observe any possible defect. *Moss v. Atlanta Housing Auth.,* 160 Ga. App. 555, supra.

The business invitee on private premises assumes the risk of danger of which he knows about and fully comprehends, or which is sufficiently obvious. 2 Harper & James, The Law of Torts 1181, § 21.5. And "there is no liability for harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the occupier did not know and could not have discovered with reasonable care." Prosser, Law of Torts (4th Ed.) 393, § 61. Likewise, there is no obligation to protect the invitee against dangers or hazards which are known to him or which are so obvious and apparent he may reasonably be expected to discover them. Prosser, Law of Torts (4th Ed.) 394, § 61; see *Gibson v. Consolidated Credit Corp.,* 110 Ga. App. 170, 178-179 (138 SE2d 77). In this instance the business invitees were obviously hired for their expertise in carpentry, they had been doing carpentry work on the greenhouse, and accepted this job involving carpentry which implied that they possessed the expertise to accomplish the job. In addition, the beams were put to a use never intended — they were ornamental and were put to a load bearing use. Where an instrumentality is put to a purpose or use not intended, the owner or person in control is not liable for injuries occasioned thereby unless he had actual knowledge that such instrumentality was defective or unsuited for that purpose and knew or should have anticipated it would be diverted to the foreign use. *Culbreath v. Kutz Co.,* 37 Ga. App. 425 (1) (140 SE 419); *Howerdd v. Whitaker,* 87 Ga. App. 850, 853-854, supra; *Batson-Cook Co. v. Shipley,* 134 Ga. App. 210, 212 (214 SE2d 176). Hall testified he did not think anyone would get on top of the beams to install the fiberglass. Davey was also aware that the beams were never intended for people to stand on. We find that the evidence demanded a verdict for the defendant.

3. Enumerations of error 1 through 5 deal with the charge and

re-charge of the court. "The verdict returned by the jury being demanded by the evidence, it is unnecessary to consider the exceptions to the charge of the court." *Nelson v. Girard,* 215 Ga. 518 (3) (111 SE2d 60); accord: *Richardson v. Hairried,* 202 Ga. 610 (2) (44 SE2d 237); *Key v. Stringer,* 204 Ga. 869 (3) (52 SE2d 305); *Wright v. Anthony,* 205 Ga. 47 (2) (52 SE2d 316); *Smith v. Smith,* 205 Ga. 404 (2) (53 SE2d 913); *Hickox v. Griffin,* 205 Ga. 859 (3) (55 SE2d 351); *Shaw v. Crawford,* 208 Ga. 595 (2) (68 SE2d 598); *Byrd v. Riggs,* 209 Ga. 930 (5) (76 SE2d 774); *Fambrough v. Fambrough,* 210 Ga. 87 (2) (78 SE2d 14); *Davis v. Davis,* 211 Ga. 714, 716 (88 SE2d 377); *Hethcock v. Padgett,* 217 Ga. 328 (2) (122 SE2d 213).

4. The trial court did not err in refusing to grant plaintiff's motion for new trial on the errors assigned, which have been decided adversely to plaintiff in Divisions 1 through 3 above.

*Judgment affirmed. Shulman, P. J., and Carley, J., concur.*

DECIDED OCTOBER 6, 1982 —
REHEARING DENIED OCTOBER 28, 1982.

*Thomas B. Branch III, Brian N. Smiley, Gordon Hiles, Sharon Rowen,* for appellant.
*Richard G. Greer, J. Blair Craig III,* for appellee.