**Mark JENKINS,**
**Plaintiff–Appellee–Cross–Appellant,**

v.

**GEORGIA POWER COMPANY,**
**Defendant–Appellant–Cross–Appellee.**

No. 87–8755.

United States Court of Appeals,
Eleventh Circuit.

July 11, 1988.

Robert L. Pennington, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for defendant-appellant-cross-appellee.

Nick Long, Long & Vincenzi, Atlanta, Ga., for plaintiff-appellee-cross-appellant.

Before JOHNSON, Circuit Judge, HENDERSON*, Senior Circuit Judge, and PITTMAN**, Senior District Judge.

PITTMAN, Senior District Judge:

This diversity case arises from a personal injury suit brought in the Northern District of Georgia by plaintiff Mark Jenkins against defendant Georgia Power, Inc. (Georgia Power). The jury returned a verdict in favor of the plaintiff in the sum of $515,000.00. Thereafter, defendant Georgia Power moved for a judgment notwithstanding the verdict or in the alternative for a new trial. The district court denied both of these motions, 668 F.Supp. 1574, whereupon the defendant appealed to this court. We reverse the district court's decision.

## I. Facts

The plaintiff, Mark Jenkins, was severely injured while painting a high voltage transmission tower owned by defendant, Georgia Power. At the time of his injury, plaintiff was employed by Nash Industrial Contractors, Inc. (Nash Contractors). Jenkins was sitting on a cross beam of the tower painting when the injury occurred. There were 115,000 volt power lines both directly above and below Jenkins. In response to being asked by the crew foreman how close he was from the electrical lines, Jenkins, assuming that the foreman meant the power lines beneath him, raised his arm to indicate the distance and either touched an uninsulated wire or came close enough to allow the electrical current to arc from the line to his body. The contact caused an electrical flash and explosion, resulting in severe burns over 50 percent of Jenkins' body.

It is undisputed that Nash Contractors was an independent contractor hired by Georgia Power to paint 100 high voltage electrical transmission towers. Evidence indicated that Nash Contractors was awarded the job based upon a competitive bid system. The evidence was that while Nash Contractors had no previous experience painting transmission towers, both Gary Nash, the owner of Nash Contractors, and Billy Crump, crew foreman, had prior experience working with electrical lines, due to their previous employment with Georgia Power. Gary Nash had worked for Georgia Power for about 21 years when he left in 1978. The last eight years Nash worked for Georgia Power, he spent on a high line crew working with energized lines ranging from 46,000 to 235,000 volts.

Both Nash Contractors and Georgia Power mutually understood that the towers supported electrical lines carrying 115,000 volts and that they would remain energized while the towers were being painted. Additionally, the written contract between Nash Contractors and Georgia Power pro-

* See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama sitting by designation.

vided that all work would be performed in accordance with the latest safety procedures set forth by the Occupational Safety and Health Administration (OSHA).

On November 8, 1983, plaintiff was telephoned by Gary Nash, who offered plaintiff a job painting towers. Later that same morning, Gary Nash went over to plaintiff's home and told plaintiff that a work crew would be by to pick him up and take him to the work site. Plaintiff could not recall whether Mr. Nash had given him any safety instructions concerning how to work around electrical lines.

Plaintiff was then picked up by Nash's crew and transported to the work site. Plaintiff testified that at no time was he given any instructions concerning the proper means of painting around electrical lines, other than being told "don't touch the wires." Plaintiff also testified that no one told him of the need to remain a certain distance away from the electrical lines.[1] Plaintiff admitted that he knew electrical lines were dangerous and that he could be injured by touching them.

Plaintiff brought suit alleging Georgia Power was negligent in failing to properly supervise, protect, require adequate safety training and in failing to warn plaintiff of unknown dangers. At the close of plaintiff's evidence, Georgia Power moved for a directed verdict on the grounds that plaintiff had failed to establish its prima facie case. The district court denied this motion and its subsequent renewal at the close of all evidence. Thereafter, the district court also denied Georgia Power's motion for judgment N.O.V. and for a new trial.

## II. Discussion

■ At both the district court level and again on the appellate level, plaintiff argued that Georgia Power could be held liable on the theory that the work to be performed was ultra-hazardous in nature. *See*, O.C.G.A. § 51-2-5(2) (1982). This argument was rejected by the district court and is, likewise, rejected by this court in light of *Georgia Power Co. v. Gillespie*, 49 Ga.App. 788, 176 S.E. 786 (1934).

In *Gillespie*, the Georgia Court of Appeals stated

[w]e are unwilling to hold that electricity is a substance so inherently dangerous that a power company may not contract for the building of power lines with an independent contractor and absolve itself from liability for an injury which occurs solely because of the negligence of such independent contractor in the doing of the work.

49 Ga.App. at 794, 176 S.E. at 789. Thus, plaintiff's reliance upon O.C.G.A. § 51-2-5(2) providing for liability when the work is "dangerous to others however carefully performed," is misplaced.

■ The real question that remains in this case is whether Georgia Power, as landowner, had a duty to warn Nash Contractors of the propensity of electricity to arc. Under Georgia law, an owner who hires an independent contractor to work on his property owes a duty to give warning to the contractor who is without actual or constructive knowledge of the danger which could not be discovered in the exercise of ordinary care. *Apostol–Athanasiou v. White*, 176 Ga.App. 178, 179, 335 S.E.2d 442, 443 (1985); *Amear v. Hall*, 164 Ga.App. 163, 166, 296 S.E.2d 611, 614 (1982). If the contractor or invitee knows of the danger or hazard, the landowner has no duty to warn because the invitee's knowledge is equal to that of the owner. *Pound v. Augusta National*, 158 Ga.App. 166, 168, 279 S.E.2d 342, 344–45 (1981); *See, e.g., Amear*, 164 Ga.App. at 166, 296 S.E.2d at 614; *Apostol–Athanasiou*, 176 Ga.App. at 179, 335 S.E.2d at 443. A landowner's duty to warn of non-obvious hazards may be discharged by warning the invitee of the existence of such danger. It is not necessary that an owner warn each individual employee of the danger but may discharge his duty by warning the independent contractor. *Brown v. American Cyanamid and Chemical Corp.*, 372 F.Supp. 311, 316–17 (S.D.Ga.1973); *Hodge*

---

1. This testimony directly contradicts that of Messrs. Crump, Benn and Gibbs, each of whom testified that plaintiff was told not to get too close to the power line. *See,* R4 at 140–41; 159–60; 169.

*v. United States*, 310 F.Supp. 1090, 1101 (M.D.Ga.1969), *aff'd*, 424 F.2d 545 (5th Cir. 1970).

The district court determined that there was a viable jury issue as to Nash's knowledge concerning the requisite distance painters should maintain away from the electrical lines to avoid an electrical arc. The trial court found that although Nash was an experienced lineman, his only statement as to the proper working distance was that he "thought" it was three feet. The court determined that under these circumstances, Georgia Power might have been negligent in failing to adequately warn Nash Contractors of the propensity of electrical current to arc and that a person should stay at least 34 inches away from the energized line.

The trial transcript reflects Mr. Nash responded to this question, "What is the distance required from this line to the worker under OSHA's regulation of distance?" by stating, "Three feet is what I thought it was." To another question, Nash stated he knew from experience that electrical wires will arc to an object some distance away. The evidence is clear that Nash knew that electricity would arc and that a person should stay away from the lines. We disagree with the trial court's determination that there was a viable jury issue.

The test for determining whether a court properly denied a motion for judgment N.O.V., is the same as that for determining whether a motion for directed verdict should be granted. *Grandison v. Smith*, 779 F.2d 637, 640 (11th Cir.1986), *reh'g denied*, 786 F.2d 1119 (11th Cir.1986) (en banc). This court is obligated to consider all of the evidence, not just the evidence which supports the non-moving party's case, in the light most favorable to the non-moving party. The case should be left with the jury's determination, if the evidence is of such quality or weight that reasonable and fair minded men could reach opposite or different conclusions. *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc). *See, e.g., Grandison*, 779 F.2d at 640; *Walden v. United States Steel Corp.*, 759 F.2d 834, 837 (11th Cir.1985).

In applying this standard to the facts of this case, it is apparent that although Nash may not have known the exact distance that a person should maintain away from the lines, he did know that electricity would arc. Since Nash knew that electricity would arc, there was no duty on the part of Georgia Power to inform him of this allegedly non-obvious danger. *See, e.g., Apostol–Athanasiou*, 176 Ga.App. at 179, 335 S.E.2d at 443; *Amear*, 164 Ga.App. at 166, 296 S.E.2d at 614; *Pound*, 158 Ga.App. at 168, 279 S.E.2d at 344–45.

There is ample evidence throughout the record which indicates Nash Contractors' knowledge of the propensity of electricity to arc, not least important of which is Gary Nash's own testimony that he knew electricity would arc over to an object "some distance" away from an electrical line. R4 at 121–22. Nash also testified that at the start of a job he would demonstrate the proper and safe way to paint towers, constantly reminding his workers of the danger in getting too close to the lines. R4 at 120–21. Testimony was also had from a Mr. Alford Benn, III, who worked for Nash Contractors. Mr. Benn testified that both Gary Nash and Billy Crump, who was the crew foreman, had told him that electricity would arc under certain conditions. R4 at 143, 154.

Testimony was also received from Mr. William Croker, a Georgia Power employee. Croker testified that he had worked with Nash at Georgia Power subsequent to the enactment of OSHA. Based upon this previous work experience, Croker believed Nash to be thoroughly familiar with the working clearances required by OSHA for 115,000 volt lines. In fact, Croker believed that Nash's practical experience in working around electricity exceeded that of his own. R6 at 486, 492–94.

In reviewing this testimony, this court holds as a matter of law that reasonable and fair minded men could not reach different conclusions as to whether Nash Contractors and its supervisors knew that electricity would arc. The evidence clearly shows that Gary Nash possessed such knowledge. Accordingly, Georgia Power

was under no duty to warn either Nash Contractors or Jenkins of the propensity for electricity to arc. *Pound,* 158 Ga.App. at 168, 279 S.E.2d at 344; *Brown,* 372 F.Supp. at 316–17; *Hodge,* 310 F.Supp. at 1101.

Since Georgia Power had no duty to warn either Nash Contractors or Jenkins, there can be no liability on the part of Georgia Power upon which a verdict could be based. *See, Galanti v. United States,* 709 F.2d 706 (11th Cir.1983), *reh'g denied,* 716 F.2d 914 (11th Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984) (existence of a legal duty essential to recovery for negligence). The district court, therefore, erred in denying Georgia Power's motion for directed verdict and for judgment notwithstanding the verdict.

### III. Conclusion

Based upon the foregoing reasons, we hold that the propensity of electricity to arc was not a non-obvious danger of which Nash Contractors had no knowledge. Since Gary Nash was aware of the danger, Georgia Power had no duty to warn either Nash Contractors or Jenkins. Absent such a duty, Georgia Power could not be held liable for negligence. Accordingly, the judgment of the district court is REVERSED.