## 69122. ARNOLD v. ATHENS NEWSPAPERS, INC. et al.
### (327 SE2d 845)

BEASLEY, Judge.

Plaintiff brought an action for damages against the defendant newspaper corporation as a result of an incident in which she was sexually assaulted. The complaint alleged liability on the part of the defendant by negligently placing the plaintiff in a dangerous situation which resulted in the injuries she received. The original action was also against the defendant G.R.B., Inc. d/b/a Arby's Roast Beef on whose premises the assault occurred. However, that defendant was dismissed without prejudice and has no part in this appeal.

After defendant's answer was filed and both sides utilized various

---

discovery procedures, the defendant moved for summary judgment. Subsequently, a hearing was conducted by the trial judge resulting in an order granting the defendant's motion and dismissing plaintiff's action. The plaintiff appeals. *Held*:

The pertinent undisputed facts of this case may be summarized as follows.

The defendant corporation owns and operates the Athens Banner Herald for which the plaintiff was a newspaper carrier. As such, she occupied the status of an independent contractor under the terms of her contract with the newspaper. As part of her duties, plaintiff was required to pick up the newspapers at a pickup point or "drop site" and then deliver them to subscribers on her route. The Athens Banner Herald uses its own mail room, as well as residences and businesses, for "drop sites." "Drop site" selection depends on several factors, including the convenience of the carrier.

Originally, the "drop site" for plaintiff's route was the newspaper mail room. At plaintiff's request the site was moved to a Golden Pantry store on West Broad Street. After a problem with a mix-up involving copies of the newspapers for the store and those for plaintiff's route, the defendant offered plaintiff the choice of returning to the mail room or using Arby's, some few hundred feet down West Broad, as the site. The plaintiff chose Arby's at West Broad. Although plaintiff argues that the plaintiff was required to use Arby's as a drop site, defendant's proof established that a choice was offered and this was uncontroverted by plaintiff's affidavit. Also uncontroverted is the evidence that the newspaper's policy is that if there is any complaint about the dropsite, either from the business establishment where it is located or from the carrier, it is moved.

The drop site was established not later than July 7, 1982. The plaintiff used this site without complaint or protest until the early morning of August 20, 1982, when, while at the drop site, she was sexually attacked and raped.

The proof offered in support of defendant's contentions showed that the defendant was unaware of any violent crimes or the potential thereof at the Arby's location. Moreover, there had been no crimes against the person at that location for fifteen years. It was admitted that three burglaries had occurred at the Arby's but the last one was several years previously. No newspaper carrier of the defendant had been sexually assaulted prior to the incident in question.

1. It is true that a general contractor owes his subcontractor the duty not to expose him to an unreasonable risk of harm. See *Ellington v. Tolar Constr. Co.*, 237 Ga. 235 (227 SE2d 336) (1976). However, this case does not fit the usual mold in that normally the independent contractor is injured on the premises of the owner or general contractor. Here, the plaintiff was injured on premises owned by a third

party and the defendant had no control over the property. The sole basis for a duty owed by the defendant is that it assigned the site to the plaintiff and would be responsible for placing the plaintiff in a dangerous locale or position of peril. See *Atlantic Coast Line R. Co. v. Godard*, 211 Ga. 373, 377 (86 SE2d 311) (1955). Plaintiff in the present case was not an employee who must perform work at the site selected by her employer but was an independent contractor who was offered a choice of drop points. Further, according to proof not contradicted by the plaintiff, she was offered a choice and selected the location which she now contends was dangerous and hazardous. This fact alone would appear to be an insurmountable barrier to plaintiff's right to recovery.

Even if it were assumed that the employer owed the plaintiff a duty insofar as site offerings was concerned there were no grounds to support plaintiff's cause against it.

Even with regard to the duty owed to an invitee by the owner or proprietor of land, who would be in a far better position to know conditions at the premises than the employer in the circumstances here, it has been held: " 'It is the duty of a proprietor to protect an invitee from injury caused by the misconduct of employees, customers and third persons if there is any reasonable apprehension of danger from the conduct of said persons or if injury could be prevented by the proprietor through the exercise of ordinary care and diligence' . . . Ordinarily, even where the proprietor's negligence is shown, he would be insulated from liability by the intervention of an illegal act which is the proximate cause of the injury . . . 'However, the above rule has been held inapplicable if the defendant (original wrongdoer) had reasonable grounds for apprehending that such criminal act would be committed.' " (Cites omitted.) *McClendon v. C. & S. Nat. Bank*, 155 Ga. App. 755, 756 (272 SE2d 592) (1980). Accord *McCoy v. Gay*, 165 Ga. App. 590, 591 (302 SE2d 130) (1983). Moreover, "Knowledge by the owner or 'occupier' or his employee of the dangerous condition created by a third person is a prerequisite to recovery under Code Ann. § 105-401 [now OCGA § 51-3-1]." *Holiday Inns v. Newton*, 157 Ga. App. 436, 437 (278 SE2d 85) (1981). Plaintiff does not allege that her employer, whose relationship to the premises was remote as compared to that of an owner or occupier, had knowledge.

Here the trial judge found: "In the case *sub judice*, there is no contention that there have been any crimes against a person on the Arby's property in the last eight and one half years . . . There have been three burglaries in the last fifteen years."

There was no showing of any crimes against the person but only against property. As pointed out in *McCoy v. Gay*, 165 Ga. App. 590, 592, supra, " '[w]hile the relevancy of other occurrences is ordinarily within the sound discretion of the court, "it is necessary that the con-

ditions of the things compared be substantially similar." . . . 'Notice of one defect or of one fact is not notice of another wholly unconnected defect or fact, even though the two may be similar in nature.' " (Cites omitted.) It was there held that proof of two prior robberies at a location did not establish knowledge regarding the possibility of the armed robbery which occurred in that case. Since defendant's knowledge of prior instances of criminal attacks at the location offered as a dropsite was an essential element of plaintiff's claim, the proof offered denying such knowledge and establishing in fact that no such attack had occurred was sufficient to authorize the grant of summary judgment for the defendants. See *Tolbert v. Captain Joe's Seafood*, 170 Ga. App. 26 (316 SE2d 11) (1984).

2. Because of the emphasis placed on the alleged duty to inspect on the defendant's part, we consider the relevant authority in such regard.

Primarily, the theory on which liability rests is that of superior knowledge on the part of the employer, owner, proprietor, contractor, etc. and if the employer, invitee, patron, subcontractor, etc. knows of the condition or has equal opportunity to know that then there is no duty to warn. *Whirlpool Corp. v. Hurlbut*, 166 Ga. App. 95, 98 (303 SE2d 284) (1983). The duty to inspect arises out of those situations where the defendant knows or should have known of the peril if he had conducted an inspection. *Hughes v. Winn-Dixie Stores*, 142 Ga. App. 110 (1), (2) (235 SE2d 619) (1977).

In this case if the defendant's agents had conducted an inspection there is nothing to indicate they could have discovered that the area was dangerous or susceptible to violent crime.

Nevertheless, the most cogent argument against the so-called duty to inspect must rest on the plain fact that the plaintiff utilized the site for over six weeks prior to the incident and yet there is not an iota of proof that she complained or in any way ascertained that this site constituted unsuitable conditions for her to carry out her tasks. In brief, the plaintiff had equal or superior knowledge of the conditions existent at the site, rather than the reverse. In other words, even if defendant had inspected the premises at the hours and times when plaintiff was present, or beforehand, there is not even an inference that can be drawn that it would have learned of some danger unknown to plaintiff. Cf. *Dekle v. Todd*, 132 Ga. App. 156 (207 SE2d 654) (1974), overruled on other grounds, *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 237, supra. Thus, the defendant would incur no liability for the failure to inspect. Furthermore, in such circumstances, the plaintiff would be barred from recovering since with at least equal knowledge she continued to work at the drop site without complaint. *Amear v. Hall*, 164 Ga. App. 163, 168 (296 SE2d 611) (1982).

Plaintiff makes much of the fact that employer had invited her to

be a trespasser at the location because the drop off practice had not been approved by the landlord. Even if defendant had a duty to clear this arrangement with the landlord first, a breach of that duty would not be a proximate cause of the injury plaintiff complains of.

For the foregoing reasons the trial judge did not err in granting defendant's motion for summary judgment.

*Judgment affirmed. Birdsong, P. J., and Carley, J., concur.*

DECIDED MARCH 8, 1985.

*Howard T. Scott*, for appellant.
*Michael R. Johnson*, for appellees.