James Randall SHARPE,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Sherry C. SHARPE, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Nos. 90–8782, 90–8929.

United States Court of Appeals,
Eleventh Circuit.

July 25, 1991.

Kris Knox, Wilkes, Johnson & Smith, PA, Baxley, Ga., Ken W. Smith, Hazlehurst, Ga., for plaintiff-appellant.

Ruth H. Young, Mellissa S. Mundell, Asst. U.S. Attys., Savannah, Ga., for defendant-appellee.

Before EDMONDSON, Circuit Judge, RONEY *, Senior Circuit Judge, and PITTMAN **, Senior District Judge.

PITTMAN, Senior District Judge:

This case involves claims brought by plaintiffs, James Randall Sharpe and Sherry Sharpe, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., for personal injuries resulting from a construction accident that occurred on a U.S. Navy project at Kings Bay, Georgia. Plaintiffs' claims raise issues of negligence under Georgia law as well as breaches of alleged duties under the Contract Work Hours and Safety Standards Act (CWHSSA), 40 U.S.C. §§ 327 et seq. The district court granted the United States' motion for summary judgment, concluding that Sharpe had equal or greater knowledge of the alleged construction site defects and was barred from recovery under Georgia contributory negligence principles. Plaintiffs have appealed from the order granting summary judgment. The district court's decision should be affirmed.

I. Facts

Plaintiff James Randall Sharpe was employed in August of 1988 as a journeyman carpenter for J.A. Jones Construction Company. J.A. Jones was the prime contractor with the U.S. navy constructing a large dry dock at a submarine base at Kings Bay, Georgia. The dry dock was 600 feet long and covered a number of acres. The construction project involved at least 600 employees of J.A. Jones and also included numerous subcontractors and their employees.

As a journeyman carpenter, Sharpe had nearly ten years experience in residential, commercial and industrial heavy construction. He had previous experience doing work similar to the tasks he performed with J.A. Jones, which involved carpentry work up on formwork using a safety harness tied off to the formwork. It is undisputed that Sharpe and the other carpenters were responsible for deciding where to tie off on the formwork to obtain safe support while they worked.

On September 9, 1988, Sharpe was working on the formwork in a block out box over one of the sluice gates of the dry dock pumphouse. It had been raining the day before, and Sharpe was aware that the framework was slick and that nails were more likely to pull out of the wet wood. He was working approximately fifteen feet above the floor and had tied off his safety belt to a two by six board attached to the formwork. The two by six had apparently been installed on a prefabricated portion of the formwork in J.A. Jones' on site carpentry shop. According to Sharpe's testimony, the two by six pulled loose while Sharpe was installing supports on the formwork, and he fell to the floor of the block out box. He landed on his back on the steel edge of an opening in the floor and fell an additional twenty-one feet to the conduit floor below. Sharpe suffered a T–9 compression fracture to his back, which rendered him paraplegic.

The contract between the navy and J.A. Jones Construction Company required J.A. Jones, as the contractor, to comply with the pertinent provisions of the U.S. Army Corps of Engineers Safety and Health Requirements Manual. The contract also required J.A. Jones to comply with similar regulations promulgated under the Contract Work Hours and Safety Standards Act (CWHSSA), 40 U.S.C. §§ 327 et seq., and the Occupational Safety and Health Act (OSHA), 29 U.S.C. §§ 651 et seq. J.A.

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

Jones employed a full time safety supervisor to implement the appropriate safety plans and insure compliance with safety regulations.

The navy conducted an investigation of the accident and concluded that J.A. Jones had violated two provisions of the Army Corps of Engineers Safety Manual. First, the navy found that the floor opening that Sharpe originally struck should have been covered or surrounded with a guardrail. Secondly, the board to which Sharpe's safety belt was attached was inadequately installed, because it was unable to withstand loads that might be applied to it. These violations of the Corps of Engineers Safety Manual also appear to constitute violations of similar CWHSSA regulations. Section 1926.500 of 29 C.F.R. requires that all floor openings be guarded by railing and toerails or covered. Section 1926.703 requires that "all formwork shall be designed, fabricated, erected, supported, braced and maintained so that it will be capable of supporting without failure all vertical and lateral loads that may reasonably be anticipated to be applied to the formwork."

J.A. Jones had control and possession of the construction site while the dry dock was being built. Certain navy personnel, however, were entitled to visit the construction site to monitor the work progress and quality. The navy employed civilian consultants and an engineering consulting firm to assist in the monitoring activities. In the course of reviewing the progress of the construction work, the navy also monitored J.A. Jones' compliance with the required safety regulations. At least three navy employees regularly reported obviously visible safety violations to J.A. Jones' safety manager for correction. Some of the safety violations were reported orally. Others were recorded in written safety violation reports which were sent to the navy officials and forwarded to J.A. Jones' safety supervisor for corrective action. J.A. Jones apparently corrected safety violations when they were reported and the navy never developed or used any formal method of enforcing J.A. Jones' compliance with the safety regulations.

Following the accident, Sharpe and his wife filed suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., to recover damages for Sharpe's injuries. His wife's suit is derivative of his claims and seeks damages for loss of companionship and consortium. Three theories of recovery have been raised. First, Sharpe claims that the government had a nondelegable duty under the CWHSSA and its regulations to make the contractor, J.A. Jones, provide a safe worksite and that the government negligently failed to do so and failed to report safety violations as allegedly required by § 104 of the CWHSSA. Secondly, Sharpe claims that the government negligently breached a duty to remove J.A. Jones as general contractor after discovering that J.A. Jones was running an unsafe jobsite. This claim is presumably based on § 107 of the CWHSSA. The alleged statutory violations under Sharpe's first and second claims both give rise to causes of action under Ga.Code Ann. § 51–2–5(4), which makes an employer liable for the negligence of a contractor where a statutory duty of the employer has been breached. Finally, Sharpe claims that the government, as landowner, voluntarily undertook the inspection of the jobsite and negligently breached its duty to perform such inspections competently.

The district court granted the government's motion for summary judgment, concluding that Sharpe had equal or greater knowledge of the defectively attached board and the uncovered hole and was therefore barred from recovery under Georgia law. The district court dismissed Sharpe's wife's suit for the same reasons. The plaintiffs have appealed.

II. Equal or greater knowledge of the plaintiff

Sharpe's three causes of action all arise under Georgia's statutory or common law. Thus, Georgia's contributory negligence principles, including the equal or greater knowledge rule, apply to each of Sharpe's claims. Under Georgia law, the liability of an employer, owner, proprietor, or contractor is based on its superior

knowledge of the conditions of its premises. *Colbert v. Piggly Wiggly Southern,* 175 Ga.App. 44, 332 S.E.2d 304, 307 (1985), *cert. denied* (1985); *Arnold v. Athens Newspapers, Inc.,* 173 Ga.App. 735, 327 S.E.2d 845, 848 (1985); *Amear v. Hall,* 164 Ga.App. 163, 296 S.E.2d 611, 615 (1982). An owner or employer, however, is not an insurer of the safety of its invitees. *Colbert,* 332 S.E.2d at 305, 307; *Amear,* 296 S.E.2d at 615; *Pound v. Augusta National, Inc.,* 158 Ga.App. 166, 279 S.E.2d 342, 344 (1981), *cert. denied* (1981). The owner's or employer's duty to inspect "arises out of those situations where the defendant knows or should have known of the peril if he had conducted an inspection." *Arnold,* 327 S.E.2d at 848. "This duty requires the owner or occupier of land to exercise ordinary care for the safety of his invitees in discovering defects or danger in the premises and imposes liability for injuries resulting from such defects *as a reasonable inspection would disclose.*" *Amear,* 296 S.E.2d at 614 (emphasis added). The court in *Amear v. Hall* further stated that "there is no liability for harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the occupier did not know and could not have discovered with reasonable care." *Id.* at 616 (citing Prosser, *Law of Torts* § 61, 393 (4th Ed.)).

■ Under the equal or greater knowledge rule, an invitee must exercise ordinary care for his own safety. He must use ordinary care "to avoid the effect of the proprietor's negligence after it becomes apparent to him or *in the exercise of ordinary care he should have learned of it.*" *Colbert,* 332 S.E.2d at 307 (emphasis added); *Amear,* 296 S.E.2d at 615. "He must make use of all his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him." *Colbert,* 332 S.E.2d at 307. Where a plaintiff has, or should have had, equal or greater knowledge of an alleged defect on an owner's premises, plaintiff cannot recover from the owner for injuries resulting from the defect. *Pound,* 279 S.E.2d at 344–45.

■ Issues of negligence, proximate cause, and contributory negligence are normally questions for the jury. *George v. Brandychase Limited Partnership,* 841 F.2d 1094, 1096 (11th Cir.1988) (citing Georgia cases); *Anderson v. Dunwoody North Driving Club, Inc.,* 176 Ga.App. 210, 335 S.E.2d 451, 453 (1985); *Pound,* 279 S.E.2d at 344. However, "in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusion to be reached," these issues become questions of law which the court can decide. *Pound,* 279 S.E.2d at 344; *Anderson,* 335 S.E.2d at 453. Georgia courts have frequently resolved issues of negligence and equal or greater knowledge as a matter of law in cases involving landowner and employer liability. *See, e.g., Clark v. Carla Gay Dress Co., Inc.,* 178 Ga.App. 157, 342 S.E.2d 468 (1986) (defendant could not have foreseen danger that plaintiff failed to foresee), *cert. denied* (1986); *Arnold,* 327 S.E.2d 845 (Plaintiff had equal knowledge of danger, and "even if defendant had inspected the premises at the hours and times when plaintiff was present, or beforehand, there is not even an inference that can be drawn that it would have learned of some danger unknown to plaintiff." *Id.* 327 S.E.2d at 848); *Anderson,* 335 S.E.2d 451; *Pound,* 279 S.E.2d 342.

The case of *Amear v. Hall* involves facts similar to the facts in Sharpe's case. In *Amear,* plaintiff was an employee of a contractor hired to do carpentry work and fiberglass installation for the defendant. In the course of installing some fiberglass between some overhead beams, plaintiff inspected the beams and walked out on them. The nails holding the beams pulled out of the adjacent wall and plaintiff fell, incurring serious injuries. The court of appeals affirmed a jury verdict for the defendant, stating that defendant had made a visual inspection and had no obligation to conduct further inspection where there had been no indication of any noticeable defects in the beams. 296 S.E.2d at 616. The court stated that plaintiff had expertise as a carpenter and held that plaintiff had an equal opportunity to observe any possible defect. *Id.* Although the court was reviewing a

jury verdict, the court concluded that "the evidence demanded a verdict for the defendant" and refused to review alleged errors in the jury charges. *Id.* at 617.

 Applying the foregoing legal standards to the facts in Sharpe's case, we conclude that there is no inference that the Navy was negligent or that any reasonable inspection could have discovered any alleged defects or prevented Sharpe's accident. Sharpe was an experienced journeyman carpenter who had worked up on formwork in a safety harness on previous jobs. He knew he was responsible for choosing a support to which he could secure himself. He presumably inspected the two by six to which he tied off for obvious defects before relying on it for support. The Navy's safety inspections were limited in scope and obviously designed to report and correct visible safety violations. It is undisputed that the formwork area where plaintiff was injured was not readily accessible to the Navy's inspectors. Moreover, they were obligated to provide only a reasonable inspection, and there is simply no basis to believe that any reasonable inspection could have uncovered any defect in the installation of the two by six that plaintiff did not discover himself. Even assuming that there was some duty under the CWHSSA to report other safety violations or to remove J.A. Jones as contractor on the project, there is no reason to believe that these steps would have resulted in the discovery of the defectively installed board that caused plaintiff's injuries.

Even if the Navy was somehow negligent, it is clear that Sharpe had equal or greater knowledge of the defects that caused his injuries. He was working on the formwork where the defectively installed board was located and he had an actual opportunity to inspect the board. As an experienced carpenter, he knew or should have known that nails are more likely to pull out of wet boards. Thus, if there were any defects discoverable through a reasonable inspection, Sharpe should have found them himself, or been aware of the dangers associated with the wet wood, when he decided how to secure himself to the form-

work. Having knowledge at least equal to that of the Navy, Sharpe cannot recover damages for his injuries from the government.

The decision of the district court granting summary judgment for the United States is AFFIRMED.