A08A0676. WESTMORELAND v. WILLIAMS et al.
(665 SE2d 30)

JOHNSON, Presiding Judge.

After Nicole Westmoreland was raped during a party at a music recording studio, she sued the recording artists who had invited her there on a theory of premises liability. The trial court granted summary judgment to the defendants. Because factual disputes preclude summary judgment, we reverse.

Summary judgment is warranted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] When considering a motion for summary judgment, the trial court must give the opposing party the benefit of all reasonable doubt and must construe the evidence and all inferences and conclusions therefrom in the light most favorable to the opposing party.[2] On appeal from summary judgment, we conduct a de novo review of the law and evidence.[3]

Viewed in a light favorable to Westmoreland, the record shows that in 2001, when Westmoreland was 19, she worked at a business that helped people reinstate their suspended driver's licenses. In early December 2001, she met Bryan Williams, vice president of Louisiana-based Cash Money Records ("CMR"), a music recording label, and a man named "Stone" who said he worked for CMR. Westmoreland described her job to Stone, who said that many CMR employees and recording artists had suspended licenses and could probably use Westmoreland's services. Stone invited Westmoreland to make a sales pitch to CMR at Patchwerks recording studio in Atlanta, where CMR had rented studio recording space.

---

[1] OCGA § 9-11-56 (c).
[2] *Hunter v. Cabe Group, Inc.*, 244 Ga. App. 162 (535 SE2d 248) (2000).
[3] Id.

Because Westmoreland was concerned about whether she would be safe at Patchwerks, she called the studio and spoke with a receptionist, who told her that Patchwerks provided security during recording sessions and also had security cameras on the premises. In addition, Westmoreland drove to the studio to view the exterior and "see if [she] was comfortable." She saw Bryan Williams and Stone in the studio parking lot, and they assured her that she would be safe inside. They encouraged her to enter the studio then, but Westmoreland declined and said she would return the next day.

The following evening, Westmoreland drove to Patchwerks with three female friends. Stone met them outside and "buzzed" them into the studio. The group went to a lounge area, where CMR was hosting a party for "a whole bunch of friends" — up to 50 people. One of the partygoers was Alfred Cleveland, a "neighborhood friend" of Ronald Williams, who is the president of CMR and Bryan Williams' brother. Cleveland had been admitted to the party with Ronald Williams' permission.

After Westmoreland's group arrived at Patchwerks, Stone's brother, Elliott, was introduced to Westmoreland as "a rapper for Cash Money." Stone and Elliott asked two of Westmoreland's friends to go out to the store for some items they needed. Westmoreland's friends left in her car. Stone then left the lounge to attend a recording session, and Westmoreland's remaining friend was busy braiding someone's hair. At that point, Westmoreland became uncomfortable because many people in the lounge were using illegal drugs, she felt isolated without her friends, and her car was gone.

Westmoreland asked someone where the bathroom was and was directed down some steps. As she descended the steps, she passed Cleveland, who told her that he would show her the way to the bathroom. Cleveland followed Westmoreland to the bathroom door. Westmoreland turned around and told Cleveland that she "didn't have to go anymore," but he grabbed her, pushed her into the bathroom, and raped her.

During the rape, someone knocked on the bathroom door. Cleveland called out, "[Y]ou know what's going on," and told the person to guard the door. When Cleveland finished raping Westmoreland, he opened the bathroom door and Elliott walked in. Cleveland told Elliott, "[Y]ou can fuck that bitch now." But when Westmoreland begged Elliott for mercy, he let her leave.

Westmoreland fled the building and waited in the parking lot for her friends. Shortly thereafter, Stone and Cleveland came outside and warned Westmoreland not to call the police. Westmoreland nevertheless reported the crime, and Cleveland was arrested. He was charged with rape but eventually pled guilty to aggravated assault with intent to rape.

Westmoreland sued CMR and Bryan and Ronald Williams for negligence, alleging that the rape resulted from their failure to keep the Patchwerks premises safe.[4] The defendants sought summary judgment on the grounds that there was no evidence that they controlled the Patchwerks premises, there was no evidence of a connection between the rape and any condition at Patchwerks, and the rape was not foreseeable. The trial court granted the defendants' motion without explanation. On appeal, Westmoreland argues that there are genuine issues of material fact as to all issues raised by CMR and the Williams brothers. No appellees' brief was filed.[5]

OCGA § 51-3-1 requires an occupier of land to exercise ordinary care in keeping the premises safe for invitees.[6] This duty extends to protecting invitees from foreseeable criminal attacks by third parties.[7] "If the proprietor has reason to anticipate a criminal act, he or she then has a duty to exercise ordinary care to guard against injury from dangerous characters."[8]

1. Appellees argued below that they did not control or manage the Patchwerks premises. Liability under OCGA § 51-3-1 may arise when an occupier of land has personal charge of or exercises the right of management or control over the property in question.[9] Whether an occupier exercises such control generally is a question of fact.[10]

Contrary to appellees' argument, there was evidence in the record that CMR paid Patchwerks for the privilege of using not only the recording studio, but also the lounge area, where CMR hosted a party for a large group of friends. There was also evidence that guests had to be "buzzed in" to the premises and that CMR had the authority to decide which people were admitted. Finally, there was evidence that Cleveland was a friend of Ronald Williams and was admitted to the party with Williams' permission. Thus, there is a

---

[4] She also sued several other parties, including Cleveland, Patchwerks, and another entity, Universal Music Group Recordings, Inc. Patchwerks and Universal won summary judgment. Westmoreland appealed that ruling, but her appeal was dismissed for failure to pay court costs. Cleveland never answered Westmoreland's complaint, so default judgment was entered against him on the issue of liability.

[5] This failure serves as an admission of Westmoreland's statement of facts, so long as those facts are supported by the record. See *Green v. Waddleton*, 288 Ga. App. 369, n. 1 (654 SE2d 204) (2007).

[6] *Bartlett v. Holder Constr. Co.*, 244 Ga. App. 397, 399 (535 SE2d 537) (2000).

[7] *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 785-786 (482 SE2d 339) (1997).

[8] (Citation and punctuation omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1) (405 SE2d 474) (1991).

[9] See *Bartlett*, supra.

[10] Id.; see also *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 520 (2) (a) (317 SE2d 853) (1984).

factual dispute as to whether appellees exercised control over the premises, and summary judgment was not appropriate on this ground.

2. Appellees also argued below that there was no evidence that the rape was connected to any condition on the premises or that the rape was foreseeable. "Knowledge by the owner or occupier or his employee of the dangerous condition created by a third person is a prerequisite to recovery under [OCGA § 51-3-1]."[11] The question of whether a criminal attack was reasonably foreseeable generally is for the jury.[12] "All that is required to survive a summary judgment motion by the defense is evidence that the particular danger which resulted in the assault on plaintiff in this case was foreseeable under all the circumstances."[13] Our Supreme Court has held that even "weak" evidence of foreseeability is sufficient to give rise to a triable issue.[14]

Construed in the light most favorable to Westmoreland, there is evidence that CMR invited a 19-year-old female onto the premises to make a business presentation and assured her that she would be safe. After she arrived, CMR left her isolated in a lounge full of people she did not know, many of whom were using illegal drugs. There is evidence that while Cleveland was raping Westmoreland in the bathroom, Elliott — who had identified himself to Westmoreland as a CMR affiliate — knocked on the door. Cleveland told Elliott, "[Y]ou know what's going on" and asked Elliott to guard the door, which Elliott did. When Cleveland finished raping Westmoreland, he opened the door for Elliott, who entered with the ostensible purpose of raping Westmoreland himself. A jury could infer from this exchange that Elliott, a representative of CMR, had prior knowledge either that Cleveland was going to attack Westmoreland or that Cleveland had previously attacked other women in a similar fashion. Such knowledge could be legally imputed to CMR.[15]

Because the evidence and the inferences from it, construed in the light most favorable to Westmoreland, permit the conclusion that appellees controlled the premises and should have foreseen the attack on Westmoreland, summary judgment was not warranted.

*Judgment reversed. Barnes, C. J., and Phipps, J., concur.*

---

[11] (Citation and punctuation omitted.) *Arnold v. Athens Newspapers*, 173 Ga. App. 735, 737 (1) (327 SE2d 845) (1985).

[12] *McNeal v. Days Inn of America*, 230 Ga. App. 786, 788 (498 SE2d 294) (1998).

[13] (Citation and punctuation omitted.) Id. at 789.

[14] *Lau's Corp.*, supra at 493.

[15] Compare *Arnold*, supra; see *Allstate Ins. Co. v. Anderson*, 121 Ga. App. 582, 584 (2) (174 SE2d 591) (1970) (in general "the knowledge of the agent is the knowledge of the principal").

DECIDED JUNE 27, 2008 — 

*Theodore H. Lackland*, for appellant.

*McLain & Merritt, Howard M. Lessinger, Hollis C. Cobb, James H. Cox*, for appellees.