**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 13, 2021**

# In the Court of Appeals of Georgia

A21A0950. STARKS et al. v. USG REAL ESTATE FOUNDATION III, LLC.

MILLER, Presiding Judge.

In this tragic case involving the shooting death of their son at Savannah State University, Sharron and Willie Starks ("the Plaintiffs") appeal from the trial court's order granting summary judgment to USG Real Estate Foundation III, LLC ("USG") on their negligence and nuisance claims. On appeal, the Plaintiffs argue that the trial court erred by granting summary judgment because genuine issues of fact remain on their claims. After a careful review of the record, we conclude that no genuine issues of material fact remain on the Plaintiffs' claims, and we are therefore compelled to affirm the trial court's order granting summary judgment to USG.

Summary judgment is appropriate if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law. On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party.

(Citation omitted.) *Moore v. Lovein Funeral Home, Inc.*, 358 Ga. App. 10 (852 SE2d 876) (2020).

So viewed, the record shows that USG was created on January 14, 2010, as a non-profit limited liability company to facilitate financial transactions for multiple-member institutions of the Board of Regents of the University System of Georgia ("Board of Regents"), including Savannah State University, to avoid the state of Georgia from incurring debt. Under the financing structure, the Georgia Higher Education Facilities Authority ("GHEFA") loaned bond proceeds to USG for multiple projects on a number of campuses.

One such project was the construction of the Student Union building at Savannah State University, which was built on a parcel of land owned by the Board of Regents. On August 12, 2010, USG and the Board of Regents entered into a ground lease agreement whereby the Board of Regents agreed to lease 0.743 acres of land it owned at Savannah State University to USG for 30 years for USG to "construct[], own[], operat[e] and maintain[]" the Student Union. The terms of the

2

ground lease required USG to continuously occupy the land throughout the term of the lease, but USG was permitted to sublet, transfer, or assign the lease with the Board of Regents' consent. USG was also required to indemnify the Board of Regents, Savannah State, and the State of Georgia and its departments from all claims and costs from "bodily injury (including death), personal injury, property damage," and other expenses arising from performance on the ground lease agreement. The agreement further required USG to, "at its sole cost and expense, keep the [p]remises and the [i]mprovements in good order, condition and repair[.]" USG's obligations also included, "without limitation, all necessary repairs and replacements of the [p]remises, structural or otherwise[.]"

USG and the Board of Regents also simultaneously executed a rental agreement that was to take effect on August 1, 2011. Pursuant to the rental agreement, USG leased the entire property, which consisted of the Student Union and all of the land that was leased to it in the ground lease, back to the Board of Regents for one year, with the option of renewing the agreement on a yearly basis for 29 years. The agreement required USG to deliver the entire property, including the Student Union, to the Board of Regents at the commencement of the term, and it prohibited the Board of Regents from vacating the premises for the duration of the lease. The agreement

3

also provided that the Board of Regents would peacefully "have, hold, use, possess, enjoy, and occupy" the entire property. USG was required to service the property at its expense, and it retained a right to enter and inspect the premises for maintenance and repair purposes. The rental agreement also contained the following provision:

COMPLIANCE WITH LAWS, ORDINANCES, AND REGULATIONS

(a) Landlord shall be responsible for compliance with all applicable laws, ordinances, and regulations, including permitting and zoning ordinances and requirements and local and state building codes, life safety codes, security, and the holding of a current and proper certificate of occupancy.

The agreement further required USG to procure an insurance policy for the premises, which designated the Board of Regents as the certificate holder of the insurance policy, and it made the Board of Regents responsible for paying the insurance policy. Savannah State University makes payments to USG under the rental agreement, and USG uses the proceeds from the rental payments to repay the loan which financed the Student Union.

USG delivered possession of the Student Union to the Board of Regents at the commencement of the term in the rental agreement. Savannah State University took possession of the Student Union and operates it exclusively for the benefit of its

4

students. USG does not have the authority to control access to the Student Union or any other portion of the property at the university. Savannah State University is responsible for providing security at the Student Union, which it provides through the Savannah State University Police Department.

The Plaintiffs' son, Christopher Starks, was a student at Savannah State University. While inside the Student Union on August 27, 2015, he was shot and killed by an unknown assailant. Following their son's death, the Plaintiffs filed the instant suit against USG, asserting claims for negligence and nuisance.[1] After answering the complaint, USG filed a motion for summary judgment and argued that it could not be liable on the Plaintiffs' claims because it is an out-of-possession landlord and that it was not obligated to provide security for the Student Union. The Plaintiffs contended that USG was not an out-of-possession landlord because it did not fully part with the premises. The trial court granted USG's motion for summary judgment after a hearing, and this appeal followed.

---

[1] The Plaintiffs amended their complaint in an attempt to add the University System of Georgia Foundation, Inc., and USGREF Manager, LLC as defendants in the action, but the Plaintiffs did not seek leave of court beforehand. Therefore, the trial court determined that these defendants were not properly before the court, and the Plaintiffs do not challenge that ruling in this appeal.

1. First, the Plaintiffs argue that the trial court erred by granting summary judgment to USG on their negligence claim because USG did not fully part with the Student Union, and therefore it is not an out-of-possession landlord. We conclude that the trial court properly granted summary judgment to USG on the Plaintiffs' negligence claim because USG is an out-of-possession landlord.

"Generally, a landowner has a duty to keep its premises safe for visitors, and this duty depends, to a certain extent, on whether the one entering the property is an invitee, a licensee or a trespasser." (Citation and punctuation omitted.) *Cham v. ECI Mgmt. Corp.*, 311 Ga. 170, 173 (2) (a) (856 SE2d 267) (2021). This duty is partially codified in OCGA § 51-3-1, which provides: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." "Liability under OCGA § 51-3-1 may arise when an [owner] [or] occupier of land has personal charge of or exercises the right of management or control over the property in question." *Westmoreland v. Williams*, 292 Ga. App. 359, 361 (1) (665 SE2d 30) (2008).

As the Supreme Court of Georgia has acknowledged, the aforementioned principle becomes more "complicated" when the property owner is also a landlord who leases the property to tenants. *Cham*, supra, 311 Ga. at 174 (2) (a). "[W]hen the [landowner/landlord] cedes possession of the property to a tenant, the landowner's control over the property and the concomitant ability to make the property safe becomes limited." Id. In such instances, "[a] landlord's liability to a third person who is injured on property which was relinquished by rental or under a lease is determined by OCGA § 44-7-14." *Colquitt v. Rowland*, 265 Ga. 905, 906 (1) (463 SE2d 491) (1995). That statute provides:

> Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

OCGA § 44-7-14. The rationale is that

> the use of the tenements really belongs to the tenant during the lease; they are his property to use for the term for which they are rented; and the landlord has no right to enter upon them, except by permission of the tenant, during the term for which they are rented. To rule otherwise, i.e.,

7

to impose liability on a landlord for the negligent acts of his tenant, would yield a harsh and unwanted rule.

(Citation and punctuation omitted.) *Colquitt*, supra, 265 Ga. at 906 (1). Accordingly, this Court has held that "a landlord's right to inspect is not the equivalent of the right to possess premises, so as to make the landlord liable under OCGA § 44-7-14." (Citation and punctuation omitted.) *Lake v. APH Enterprises, LLC*, 306 Ga. App. 317, 319 (702 SE2d 654) (2010). Indeed, "landlords still fully part with possession of leased premises when they retain limited entry or inspection rights for landlord-related purposes." Id. This is so, because a landlord's retention of the right to enter the leased premises "for landlord-related purposes does not evidence such dominion and control of the premises so as to vitiate the landlord's limited liability imposed by OCGA § 44-7-14 and replace it with the liability imposed by OCGA § 51-3-1, the premises liability statute upon which [the Plaintiffs'] action is based." *Webb v. Danforth*, 234 Ga. App. 211 (505 SE2d 860) (1998).

The facts of this case are analogous to those in *Lake*. There, an unknown assailant shot the victim in the parking lot of a restaurant. *Lake*, supra, 306 Ga. App. at 317. The restaurant was owned by APH, but it was leased and operated by Curtis Marshall. Id at 317-318. Under the terms of the lease agreement, Marshall was

8

responsible for providing security and daily maintenance for the premises including the parking lot, while APH was responsible for handling "major" repairs such as a broken air conditioning unit or a leaky roof. Id. at 318. APH's owner also paid the property taxes, deducted repair expenses, maintained insurance for the building, and periodically visited the property to "see[] how things were going." Id.

In a suit by the victim against APH, this Court affirmed the trial court's grant of summary judgment to APH after concluding that there were no genuine issues of material fact as to whether APH was an out-of-possession landlord. *Lake*, supra, 306 Ga. App. at 319. We reasoned that, although APH retained a limited right of reentry or inspection rights, those rights did not evince the necessary dominion and control of the premises to impose liability under OCGA § 51-3-1. Id. at 319-320. We further reasoned that the area where the shooting occurred was under Marshall's exclusive control and that there was no evidence that APH contracted to remain in possession of the area where the shooting occurred. Id. at 320. Thus, we concluded that APH was not liable on the Plaintiff's negligence claim. Id.

Similarly, in *Webb*, the owner of a house rented the property to a tenant. *Webb*, supra, 234 Ga. App. at 211. The agreement between the parties required the owner to maintain the structure while the tenant maintained the yard. Id. The tenant took

9

possession of the property, but the owner periodically visited the property. Id. At some point, the tenant brought a dog onto the property and invited a minor child onto the property to play in the yard, after which the dog broke free from its chain and attacked the child. Id.

On appeal, we affirmed the trial court's grant of summary judgment to the owner. *Webb*, supra, 234 Ga. App. at 211. In reliance on OCGA § 44-7-14, we reasoned that the owner, who had relinquished possession of the property to the tenant, could not be liable to a third party for damages resulting from the tenant's negligence. Id. We further reasoned that the owner's retention of the right to enter, inspect, and repair the property was "not inconsistent with a full surrender of possession to the tenant." Id.

Here, the record shows that USG leased the entire property, including the Student Union, to the Board of Regents. The rental agreement gave possession of the property, including the Student Union, to the Board of Regents, and it required USG to deliver the entire property to the Board of Regents at the commencement of the term which began on August 1, 2011. The agreement also provided that the Board of Regents was to peacefully "have, hold, use, possess, enjoy, and occupy" the entire property for the duration of the lease. Although USG retained a right of entry onto the

10

property to conduct inspections and was required to conduct necessary repairs, the record shows that Savannah State University took possession of the Student Union, it operates the Student Union exclusively, and USG has no authority or control over access to the Student Union.

Applying *Lake* and *Webb* to the instant case, we conclude that the trial court correctly determined that USG fully parted with possession of the Student Union and therefore USG is an out-of-possession landlord under OCGA § 44-7-14. Although USG was obligated to service and maintain the property and retained a right to enter the property for such purposes, these obligations and rights do not evince the requisite dominion and control of the premises to impose liability under OCGA § 51-3-1, nor are they inconsistent with a full surrender of possession of the property. Thus, the trial court correctly determined that USG is an out-of-possession landlord, and, consequently, it cannot be held liable on the Plaintiffs' negligence claim.

The Plaintiffs assert a variety of arguments they contend require a reversal of the trial court's summary judgment order. First, the Plaintiffs rely upon our decisions in *Stelly v. WSE Property Mgmt., LLC*, 350 Ga. App. 627 (829 SE2d 871) (2019) and *Ladson Investments v. Bagent*, 151 Ga. App. 24 (258 SE2d 718) (1979) to support their claim that USG is liable under OCGA § 51-3-1. These decisions, however, are

11

factually distinguishable from the instant case. In *Stelly*, we reversed the trial court's order granting summary judgment to a property management company in a suit by the victim who was injured at an apartment complex because the company partially possessed the property in that it was required to operate an onsite office every day at the apartment complex. Id. 627-632 (1). In *Ladson Investments*, a tenant's employee sued the landlord under OCGA § 44-7-14's predecessor statute for injuries sustained when a freight elevator in which she was riding fell to the bottom of the elevator shaft. *Ladson Investments*, supra, 151 Ga. App. at 24. We held that the evidence did not demand a finding that the landlord fully parted with possession of the premises because the landlord retained the right to inspect the premises, and a provision in the lease required the landlord to replace electrical equipment it had installed, including a switch that might have caused the elevator to malfunction and injure the plaintiff. Id. at 26 (2). In the instant case, however, there was no evidence presented to show that USG partially possessed the Student Union or that some equipment it was contractually responsible for caused the injury. Thus, our decisions in *Stelly* and *Ladson Investments* are factually distinguishable and do not compel a reversal of the trial court's order.

12

Next, the Plaintiffs argue that genuine issues of material fact remain as to whether USG is an out-of-possession landlord because the ground lease agreement required USG to "occupy" the property for the duration of the lease. We disagree. It is true that the ground lease agreement, which was executed to allow USG to construct and own the Student Union, provided that USG was to "occupy the [p]remises continuously throughout the [t]erm of this lease and shall not desert, surrender, abandon or cease using the [p]remises during the term of this [l]ease." As previously stated, however, the ground lease permitted USG to transfer or assign the entire lease with the Board of Regents' consent, and the record shows that USG and the Board of Regents executed the rental agreement which required USG to surrender its possession of the land and the Student Union to the Board of Regents. There is nothing in the rental agreement to show that USG contracted to remain in possession of any portion of the property or the Student Union after its surrender of the property to the Board of Regents. Consequently, the Plaintiffs' argument that the ground lease agreement presents a genuine issue of material fact as to whether USG is an out-of-possession landlord fails.

The Plaintiffs further argue that USG is not an out-of-possession landlord because the rental agreement allegedly required USG to provide security for the

13

Student Union, but we reject this interpretation of the contract. The provision at issue states the following: "[l]andlord shall be responsible for compliance with all applicable laws, ordinances, and regulations, including permitting and zoning ordinances and requirements and local and state building codes, life safety codes, security, and the holding of a current and proper certificate of occupancy." In examining this particular provision, we first note that it is titled, "Compliance with Laws, Ordinances, and Regulations." See *Giles v. Nationwide Mut. Fire Ins. Co.*, 199 Ga. App. 483, 484 (1) (405 SE2d 112) (1991) (holding that clause language must be read together with clause heading when construing contract.) (citation omitted). The provision then goes on to state that USG, as landlord, is responsible for complying with all applicable laws and ordinances regarding security. Read in context, we do not interpret this provision as itself requiring USG to provide security for the Student Union to impose liability under OCGA § 51-3-1. Instead, this provision merely states that USG is required to comply with any specific laws or ordinances in regard to security. Notably, the Plaintiffs fail to identify any particular law, ordinance, or regulation that required USG to provide security for the property, and, according to the record, the city and the county where the Student Union is located have not yet enacted legislation requiring USG to implement security measures or to take any

14

action to comply with this provision of the agreement regarding security. Accordingly, this provision of the rental agreement also does not provide a basis for a reversal of the trial court's summary judgment order.

Lastly, the Plaintiffs contend that parol evidence demonstrates that USG did not fully part with possession of the Student Union and that it was actively involved in operating the facility. To support their claim, the Plaintiffs first point to the deposition of Cynthia Alexander, a Board of Regents employee, who testified that she handled "virtually all of the operational aspects of [USG]" regarding its maintenance obligations to the Student Union. The Plaintiffs also point to an email exchange between the chief business officer for Savannah State University and a project manager for the Board of Regents regarding repairs for the Student Union, which they claim indicates that USG was "very active" in the management and operation of the facility. This evidence, however, fails to support the conclusion that USG did not fully part with possession of the Student Union. Both pieces of evidence merely revealed that USG was "very active" in complying with its responsibilities for maintenance and "repairs and replacements" for the Student Union. There was nothing in either piece of evidence to show that, apart from its maintenance obligations, USG controlled or operated the Student Union in any manner. The mere

fact that a landlord is active in repairing a property does not lead to the conclusion that the landlord has not fully parted with possession of the premises under OCGA § 44-7-14. Accordingly, for all of the reasons stated above, we conclude that the trial court properly determined that USG is an out-of-possession landlord under OCGA § 44-7-14, and therefore USG was entitled to summary judgment on the Plaintiffs' negligence claim.

2. Next, the Plaintiffs argue that the trial court erred by granting summary judgment to USG on their nuisance claim because genuine issues of fact remain as to whether USG maintained a nuisance on Savannah State University's campus. We disagree. The law is well settled that an out-of-possession landlord cannot be held liable for creating or maintaining a nuisance on the premises. See *Diffley v. Marshall's at East Lake*, 227 Ga. App. 343, 345 (489 SE2d 123) (1997) (holding that the limited liability of OCGA § 44-7-14 encompasses "uses of leased premises that create a nuisance"). As discussed above in Division 1, USG fully parted with possession of the Student Union and, consequently, it cannot be held liable on the Plaintiffs' nuisance claim. See *Younger v. Dunagan*, 318 Ga. App. 554, 555-556 (733 SE2d 81) (2012) (holding that landlord was not liable on the plaintiff's nuisance claim regarding a vicious dog on the premises, where the landlord relinquished

16

possession and control over the premises to the tenant); *Diffley v. Marshall's at East Lake*, 227 Ga. App. 343, 344-345 (489 SE2d 123) (1997) (holding that the landlord was not liable for nuisance because the tenant was in full possession of the premises). Therefore, the trial court properly granted summary judgment to USG on the Plaintiffs' nuisance claim.

Accordingly, although the circumstances of this case are extremely unfortunate, which is further underscored by the result we have reached in this matter, for the reasons stated above, we are constrained by the record and we must affirm the trial court's order granting summary judgment to USG.

*Judgment affirmed. Hodges and Pipkin, JJ., concur*.